IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CHRISTOPHER LAMONT PENN,

    Plaintiff,

v.                                                    2:22-CV-089-Z-BR

DIRECTOR, TDCJ-CID, *et al.*,

    Defendants.

## ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court are the findings, conclusions, and recommendation ("FCR") of the United States Magistrate Judge to grant in part and deny in part the Motions to Dismiss filed by Defendants. ECF No. 13. Objections to the findings, conclusions, and recommendation have been filed. *See* ECF No. 14. After making an independent review of the pleadings, files, and records in this case, the Court concludes that the findings, conclusions, and recommendation of the Magistrate Judge are correct. It is therefore **ORDERED** that the findings, conclusions, and recommendation of the Magistrate Judge are **ADOPTED** and the Motions are **GRANTED IN PART** and **DENIED IN PART** as discussed in the FCR.

The Court writes further to address Defendants' objections. Defendants object that Plaintiff "has not stated an Eighth Amendment claim." ECF No. 14 at 3. Defendants correctly recite the test for when "prison conditions violate the Eighth Amendment" — it "is two-fold" *Id.* (citing *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015)). First, "conditions must pose an unreasonable risk of serious damage to a prisoner's health — an objective test." *Ball*, 792 F.3d at 592 (internal marks omitted). Second, "prison officials must have acted with deliberate indifference to the risk posed — a subjective test." *Id.*

Defendants misunderstand the test in two closely-related ways. First, Defendants object that Plaintiff "failed to plead any injury in fact." ECF No. 14 at 4. Elevating the requisite showing from "unreasonable risk" to "injury in fact" would be an improper interpretation of the objective portion of the test. *Cf. Ball*, 792 F.3d at 592. Second, Defendants reverse the perspective of the test, objecting that Plaintiff's complaint lacks "mention of harm incurred" or "the potential for harm in the future." ECF No. 14 at 3. The objective test is *forward*-looking rather than considered in hindsight — no past "harm incurred" is required. And neither is the present existence of "potential for harm in the future" required. Instead, the test is whether, *at the time of the alleged violative condition*, "prison officials . . . acted with deliberate indifference" to an "unreasonable risk." *Ball*, 792 F.3d at 592. It is of no import that Plaintiff suffered no lasting injury *if* the conditions "pose[d] an unreasonable risk of serious damage" and officials "acted with deliberate indifference to the risk." *Id.*

In support of their objection, Defendants contest the Magistrate Judge's reliance on *Withrow v. Heaton*, 275 F.3d 42 (5th Cir. 2001). *See* ECF No. 14 at 4. At the outset, Defendants assert a bare conclusion: "This case is distinguishable because the *Withrow* plaintiff sufficiently alleged that prison officials were indifferent to the health and safety of inmates." *Id.* (internal marks omitted). That is the legal conclusion firmly within the province of the Court.

In *Withrow*, "prison officials refused to repair windows during the winter despite extremely cold temperatures in the prison" and forced the plaintiff "to walk 400 feet to the shower room in his underwear every day despite the extreme cold." 275 F.3d 42. Defendants emphasize the repeated — daily — repetition of the walk. *See* ECF No. 14 at 4. Defendants again read something absent into the test. In effect, *Withrow* concerns a prisoner who was subjected to the same set of conditions — conditions remarkably similar to those in this case: prolonged exposure to the

extreme cold and a barefoot walk in the extreme cold. The *Withrow* plaintiff, like Sisyphus, suffered the same peril each day. While repetition augments the severity of malice, it is not a requirement to state a valid claim.

Similarly, Defendants contrast *Withrow* because that case noted special protective measures provided to the guards that were denied to inmates. *Id.* (citing *Withrow*, 275 F.3d 42 ("[W]hile officers wore heavy winter coats, caps, and gloves and acquired space heaters for their station to cope with the cold, they forced inmates to walk to the shower in their underwear.") But Plaintiff alleges "Officer Mitchell also took my shoes, *thermal tops and bottom*, along with my T.D.C.J. pants and shirt." ECF No. 3 at 9 (emphasis added). Plaintiff was denied protective measures — thermals — and thereafter subjected to a "freezing" shower and barefooted walk back from one building to another "in icy conditions." ECF No. 3 at 16–17.

Moreover, *Withrow* relies on another case that refutes Defendants' characterization of Plaintiff's complaint as "[m]omentary and transient discomfort." 275 F.3d at 42 n.8 (citing *Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999)). *Palmer* instructs courts "[i]n addition to duration" to "consider the totality of the specific circumstances that constituted the conditions of [the plaintiff's] confinement, with particular regard for the manner in which some of those conditions had a mutually enforcing effect." 193 F.3d at 353–54 (finding the Eighth Amendment forbids prison officials from "depriv[ing]" inmates "of any protection from excessive cold and wind"). *Palmer*, in turn, cites to a Seventh Circuit case *Dixon v. Godinez*, observing that "most successful Eighth Amendment claims often involve allegations of cold in conjunction with other serious problems." *Id.* (citing 114 F.3d 640 (7th Cir. 1997)).

Considering "the totality of the specific circumstances that constituted the conditions," Plaintiff's claim has plausible merit. Plaintiff states that the alleged misconduct occurred on

February 20, 2021 — which was during "a historical winter event" when "[a] deep freeze impacted parts of the continental United States, remarkably engulfing the entire state of Texas. Every county in the state . . . was placed under a Winter Storm Warning, with many experiencing wind chill values below zero. It was the coldest winter storm for Texas since December 1989."[1] And that Plaintiff's timeline seems to be that he spent "2 ½ hours in the shower under freezing conditions" *and then* was made to "walk back barefoot," ECF No. 3 at 9, "those conditions had a mutually enforcing effect," and posed a greater risk to Plaintiff's safety than would the reverse order. *Palmer*, 193 F.3d at 353.

Finally, as to Defendants' objection that Plaintiff "fails to make any attempt to suggest the Defendants were subjectively aware of conditions that posed a risk to his own health and safety," ECF No. 14 at 4, that is refuted by the totality of the circumstances. The prison apparently issued thermal clothing to protect inmates during a "historical winter event" — known colloquially as the "Snowpocalypse" that resulted in many reported extreme cold exposure-related deaths in this state. That his thermals were taken and he was also made to "walk back barefoot" "in icy conditions from 11 [building] to 8 [building]", ECF No. 3 at 17) after a prolonged cold shower supports that Plaintiff was exposed to an unreasonable risk of serious cold-related damage and that officials were aware of the risk and failed to stake steps to abate it by, for instance — at a minimum — returning his thermals and shoes.

Therefore, Defendants' objections to the FCR are unavailing. The Motions to Dismiss (ECF Nos. 10, 12) are **DENIED** as to Plaintiff's Eighth Amendment claims against Defendants Cabrera and Mitchell in their individual capacities and **GRANTED** in all other respects.

---

[1] The Great Texas Freeze: February 11–20, 2021, National Oceanic and Atmospheric Administration, https://www.ncei.noaa.gov/news/great-texas-freeze-february-2021 (last visited September 13, 2023).

IT IS SO ORDERED.

September 16, 2023

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE