IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LAMONT PENN<br>TDCJ-CID No. 1847503,<br><br>　　Plaintiff,<br><br>v.<br><br>BOBBY LUMPKIN, *et al.*,<br><br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>2:22-CV-089-Z-BR |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendants Marissa Cabrera and Phillip Mitchell. (ECF 22). For the reasons stated herein, the Magistrate Judge recommends that the Motion be GRANTED.

## I. BACKGROUND

On February 20, 2021, Plaintiff Christopher Lamont Penn ("Penn"), an inmate at the Clements Unit of the Texas Department of Criminal Justice, was detained and handcuffed by Defendant Marissa Cabrera ("Cabrera") after he allegedly threatened to harm another inmate. (ECF 3 at 9; ECF 25 at 5). Cabrera then escorted Penn from 8 Building to 11 Building, where Defendant Phillip Mitchell ("Mitchell") placed Penn in a shower cell, which doubles as a holding cell. (ECF 3 at 9). Mitchell removed Penn's shoes and clothing, except for his boxer briefs, and Penn remained there for approximately two and a half hours under what he describes as "freezing conditions." (ECF 3 at 9). At the end of this two-and-a-half-hour period, Cabrera escorted a barefoot Penn back to 8 Building. (*Id.*) The record does not show what clothing, if any, was returned to Penn for his return to 8 Building.

1

Defendants state that the shower holding cells in 11 Building are inside and heated. (ECF 25 at 8). Although 11 Building is not climate controlled, there are heated vents outside the shower doors that heat the shower cells. (*Id.*). The showers customarily double as a holding cell when the facility's pre-hearing detention cells are at capacity. (*Id.*). As a matter of prison policy, when an offender is taken to a pre-hearing detention cell, the inmate is strip searched, after which his underwear is returned. (*Id.*). The prisoner is left in his underwear until he is taken to a different cell. (*Id.*). Defendants state that the distance between 8 Building and 11 Building is 727 feet. (*Id.*).

In their Motion, Defendants contend they are entitled to qualified immunity because Penn cannot show a constitutional violation and, further, he cannot provide sufficient evidence to create a fact question as to whether Defendants are entitled to qualified immunity. Penn did not respond to the Motion.

## II. LEGAL STANDARD

### A.    Summary Judgment Standard.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that

it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

B. **Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that

the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S.Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin*, the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin*, 48 F.4th at 392. In this case, however, Penn does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time

of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Each Defendant's conduct must be analyzed separately to determine if he is entitled to qualified immunity.

**C.     Plaintiff's Failure to Respond is Not Dispositive.**

When a nonmoving party does not file a response to a motion for summary judgment, the failure to respond "does not permit the court to enter a 'default' summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-cv-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023). As the United States Court of Appeals for the Fifth Circuit has explained:

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. *John v. La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir. 1985). The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed. *Id.* at 708. Therefore, if the district judge's decision was to grant summary judgment solely because of a default, such decision constituted reversible error.

*Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 & n.3 (5th Cir. 1995) (*citing Hibernia*). Moreover, FED. R. CIV. P. 56(e) provides that:

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Therefore, Defendants still must provide sufficient evidence upon which the Court may base a

5

summary judgment. Failure to do so requires the Court to deny the Motion, even if it is unopposed.

### III. LEGAL ANALYSIS

To defeat the Motion, Penn must show that Defendants' qualified immunity defense is unavailable. *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id*. at 654 (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs*., 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

To establish a constitutional violation based on the conditions of his confinement, a prisoner must satisfy a two-part test, consisting of an objective and a subjective component. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). First, the prisoner must provide evidence of the objective component: conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Davis*, 157 F.3d at 1006 (internal quotations omitted). "Second, under a subjective standard, the prisoner must establish that the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Harper*, 174 F.3d at 720. To establish deliberate indifference, the prisoner must show that the defendants "(1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157

F.3d 1022, 1025 (5th Cir. 1998), *citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

For cold temperatures to give rise to a constitutional violation, the plaintiff must show that the cold conditions were sufficiently serious that he was denied "the minimal civilized measure of life's necessities." *Johnson*, 281 F. App'x at 321 (holding there was not a viable claim for being held in extreme heat where plaintiff alleged the temperatures were uncomfortably hot but failed to allege any heat-related injuries); *Porter v. Werner*, No. 1:16CV69-RHW, 2017 WL 599418, at *3 (S.D. Miss. Feb. 14, 2017) ("Plaintiff's conclusory assertions that the temperatures were "ice cold" or "real cold" [when held in a jail cell for approximately 8 hours during month of August in Mississippi] do not rise to the level of severity needed to state an unconstitutional condition of confinement"); *Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (finding no Eighth Amendment violation when prisoner alleged that "he was sentenced to 'strip cell/isolation,' that he was deprived of a mattress, sheets, and blankets for 60 days, and that in the fall and winter of 2015 he was given only 'a very very light fabric material,' two undershirts, and two pairs of socks, and was not provided with a mattress and bedding between 5:30 a.m. and 8:30 p.m. each day.").

Cold conditions, however, may give rise to unconstitutional conditions when they are in combination with other untenable conditions. *See Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) ("We find that the totality of the specific circumstances presented by [Plaintiff's] claim— his overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area—constituted a denial of the minimal civilized measure of life's necessities." (internal quotation marks and citation omitted)); *Alex v. Stalder*, 225 F. App'x 313, 314 (5th Cir. 2007) (holding that prisoner's allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown

7

during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk" stated a "nonfrivolous Eighth Amendment contention"); *Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (noting that, if proven, conditions of solitary confinement where inmate alleged he was forced to sleep on floor with rats crawling on him in extremely cold temperatures "would contravene the eighth amendment"); *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983) (noting that state pretrial detainee's statements that he was "intentionally subjected ... to a cold, rainy, roach-infested facility with inoperative, scum-encrusted washing and toilet facilities sufficiently alleges a cause of action cognizable under 42 U.S.C. § 1983 and the eighth and fourteenth amendments." (citations omitted)).

In this case, Defendants provide evidence that Penn was placed in the shower cell from approximately 4:15 p.m. to 6:45 p.m. (ECF 25 at 5), assuming that Penn's Complaint is correct that he was in the shower cell for two and a half hours. During that time frame, according to documentation provided by Defendants and not disputed by Penn, the outside temperature in Amarillo dropped from 56.5 degrees at 4 p.m. to 44.6 degrees at 7 p.m. (*Id*. at 10).

Penn provides no evidence that these temperatures were so cold that they constituted a violation of his constitutional rights. *Johnson*, 281 F. App'x at 321. Further, he alleges no other conditions that, when combined with the cold temperature, show that he was deprived of "the minimal civilized measure of life's necessities." Sitting in a presumably cold cell for more than two hours and then walking barefoot outdoors for 727 feet in 44-degree weather was no doubt unpleasant. However, without more, such transitory discomfort does not rise to the level of an "extreme deprivation" such that Penn's Eighth Amendment rights were violated. *Porter*, 2017 WL 599418, at *3.

Because Penn has failed to provide evidence sufficient to show a constitutional violation, there is no evidence that Defendants acted with deliberate indifference regarding Penn's constitutional rights. Specifically, he provides no evidence that either Cabrera or Mitchell knew that placing Penn in a heated shower cell for a short period of time would result in an excessive risk to Penn's health or safety. Penn also has not shown that either Cabrera or Mitchell drew the inference that a potential for harm existed for Penn due their conduct. *See Bradley*, 157 F.3d at 1025 (5th Cir. 1998). As a result, the Court does not reach the second prong of the qualified immunity analysis: whether, despite deliberate indifference, Defendants acted reasonably. Defendants are entitled to qualified immunity on Penn's claims and their Motion should be granted.

## RECOMMENDATION

As set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion For Summary Judgment be GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED May 17, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the

event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).